Michael R. Lozeau (State Bar No. 142893)
Richard T. Drury (State Bar No. 163559)
Douglas J. Chermak (State Bar No. 233382)
LOZEAU DRURY LLP
410 12th Street, Suite 250
Oakland, CA 94607
Tel: (510) 836-4200
Fax: (510) 836-4205 (fax)
E-mail: michael@lozeaudrury.com
        richard@lozeaudrury.com
        doug@lozeaudrury.com

Attorneys for Plaintiff
CALIFORNIA SPORTFISHING
PROTECTION ALLIANCE

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE, a non-profit corporation, | Case No. _____ |
| Plaintiff, | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES** |
| vs. | |
| REPUBLIC SERVICES, INC., a corporation; ALLIED WASTE SYSTEMS, INC., a corporation, | (Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 to 1387) |
| Defendants. | |

CALIFORNIA SPORTFISHING PROTECTION ALLIANCE ("CSPA"), a California non-profit corporation, by and through its counsel, hereby alleges:

## I.    JURISDICTION AND VENUE

1.      This is a civil suit brought under the citizen suit enforcement provisions of the Federal Water Pollution Control Act, 33 U.S.C. § 1251, *et seq.* (the "Clean Water Act" or "the Act"). This Court has subject matter jurisdiction over the parties and the subject matter of this action pursuant to Section 505(a)(1)(A) of the Act, 33 U.S.C. § 1365(a)(1)(A), and 28 U.S.C. § 1331 (an action arising under the laws of the United States). The relief requested is authorized pursuant to 28 U.S.C. §§ 2201-02 (power to issue declaratory relief in case of actual controversy and further necessary relief based on such a declaration); 33 U.S.C. §§ 1319(b), 1365(a) (injunctive relief); and

1    33 U.S.C. §§ 1319(d), 1365(a) (civil penalties).

2         2.     On June 18, 2014, Plaintiff provided notice of Defendants' violations of the Act, and

3    of its intention to file suit against Defendants, to the Administrator of the United States

4    Environmental Protection Agency ("EPA"); the Administrator of EPA Region IX; the Executive

5    Director of the State Water Resources Control Board ("State Board"); the Executive Officer of the

6    California Regional Water Quality Control Board, San Francisco Bay Region ("Regional Board");

7    and to Defendants, as required by the Act, 33 U.S.C. § 1365(b)(1)(A).  A true and correct copy of

8    CSPA's notice letter is attached as Exhibit A, and is incorporated by reference.

9         3.     More than sixty days have passed since notice was served on Defendants and the state

10   and federal agencies.  Plaintiff is informed and believes, and thereupon alleges, that neither the EPA

11   nor the State of California has commenced or is diligently prosecuting a court action to redress the

12   violations alleged in this complaint.  This action's claim for civil penalties is not barred by any prior

13   administrative penalty under Section 309(g) of the Act, 33 U.S.C. § 1319(g).

14        4.     Venue is proper in the Northern District of California pursuant to Section 505(c)(1)

15   of the Act, 33 U.S.C. § 1365(c)(1), because the source of the violations is located within this judicial

16   district.  Pursuant to Local Rule 3-2(d), intradistrict venue is proper in Oakland, California, because

17   the source of the violations is located within Contra Costa County.

18   **II.**    **<u>INTRODUCTION</u>**

19        5.     This complaint seeks relief for Defendants' discharges of polluted storm water and

20   non-storm water pollutants from Defendants' facility located at 441 North Buchanan Circle, in

21   Pacheco, California ("the Facility") in violation of the Act and National Pollutant Discharge

22   Elimination System ("NPDES") Permit No. CAS000001, State Water Resources Control Board

23   Water Quality Order No. 91-13-DWQ, as amended by Water Quality Order No. 92-12-DWQ and

24   Water Quality Order No. 97-03-DWQ (hereinafter the "Permit" or "General Permit").  Defendants'

25   violations of the discharge, treatment technology, monitoring requirements, and other procedural and

26   substantive requirements of the Permit and the Act are ongoing and continuous.

27        6.     The failure on the part of persons and facilities such as Defendants and its industrial

28   facility to comply with storm water requirements is recognized as a significant cause of the

COMPLAINT

continuing decline in water quality of Suisun Bay and other area receiving waters.  The general consensus among regulatory agencies and water quality specialists is that storm pollution amounts to more than half of the total pollution entering the aquatic environment each year.

**III.**   **PARTIES**

7.      Plaintiff CALIFORNIA SPORTFISHING PROTECTION ALLIANCE ("CSPA") is a non-profit public benefit corporation organized under the laws of the State of California with its main office in Stockton, California.  CSPA has approximately 2,000 members who live, recreate and work in and around waters of the State of California, including Suisun Bay.  CSPA is dedicated to the preservation, protection, and defense of the environment, the wildlife and the natural resources of all waters of California.  To further these goals, CSPA actively seeks federal and state agency implementation of the Act and other laws and, where necessary, directly initiates enforcement actions on behalf of itself and its members.

8.      Members of CSPA reside in and around Suisun Bay and enjoy using the Bay for recreation and other activities.  Members of CSPA use and enjoy the waters into which Defendant has caused, is causing, and will continue to cause, pollutants to be discharged.  Members of CSPA use those areas to fish, sail, boat, kayak, swim, bird watch, view wildlife and engage in scientific study including monitoring activities, among other things.  Defendants' discharges of pollutants threaten or impair each of those uses or contribute to such threats and impairments.  Thus, the interests of CSPA's members have been, are being, and will continue to be adversely affected by Defendants' failure to comply with the Clean Water Act and the Permit.  The relief sought herein will redress the harms to Plaintiff caused by Defendants' activities.

9.      Continuing commission of the acts and omissions alleged above will irreparably harm Plaintiff and its members, for which harm they have no plain, speedy or adequate remedy at law.

10.     Defendant Allied Waste Systems, Inc. ("Allied Waste") is a corporation organized under the laws of Delaware.  Plaintiff is informed and believes and thereupon alleges that Allied Waste owns and operates the Facility that is the subject of this complaint.

11.     Defendant Republic Services, Inc. ("Republic Services") is a corporation organized under the laws of Delaware.  Plaintiff is informed and believes and thereupon alleges that Republic

COMPLAINT

Services owns or operates the Facility that is the subject of this complaint.  Republic Services is indicated as the Facility's operator on the Facility Annual Reports it submits to the Regional Board as well as the Facility's Notice of Intent to Comply with the Terms of the General Permit.  In addition, the Facility's operators e-mail address ends in "@republicservices.com."

## IV.    STATUTORY BACKGROUND

12.    Section 301(a) of the Act, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant into waters of the United States, unless such discharge is in compliance with various enumerated sections of the Act.  Among other things, Section 301(a) prohibits discharges not authorized by, or in violation of, the terms of an NPDES permit issued pursuant to Section 402 of the Act, 33 U.S.C. § 1342.

13.    Section 402(p) of the Act establishes a framework for regulating municipal and industrial storm water discharges under the NPDES program.  33 U.S.C. § 1342(p).  States with approved NPDES permit programs are authorized by Section 402(p) to regulate industrial storm water discharges through individual permits issued to dischargers or through the issuance of a single, statewide general permit applicable to all industrial storm water dischargers.  33 U.S.C. § 1342(p).

14.    Pursuant to Section 402 of the Act, 33 U.S.C. § 1342, the Administrator of the U.S. EPA has authorized California's State Board to issue NPDES permits including general NPDES permits in California.

15.    The State Board elected to issue a statewide general permit for industrial storm water discharges.  The State Board issued the General Permit on or about November 19, 1991, modified the General Permit on or about September 17, 1992, and reissued the General Permit on or about April 17, 1997, pursuant to Section 402(p) of the Clean Water Act, 33 U.S.C. § 1342(p).

16.    In order to discharge storm water lawfully in California, industrial dischargers must comply with the terms of the General Permit or have obtained and complied with an individual NPDES permit.  33 U.S.C. § 1311(a).

17.    The General Permit contains several prohibitions.  Effluent Limitation B(3) of the General Permit requires dischargers to reduce or prevent pollutants in their storm water discharges through implementation of the Best Available Technology Economically Achievable ("BAT") for

toxic and nonconventional pollutants and the Best Conventional Pollutant Control Technology ("BCT") for conventional pollutants.  BAT and BCT include both nonstructural and structural measures.  General Permit, Section A(8).  Discharge Prohibition A(2) of the General Permit prohibits storm water discharges and authorized non-storm water discharges that cause or threaten to cause pollution, contamination, or nuisance.  Receiving Water Limitation C(1) of the General Permit prohibits storm water discharges to any surface or ground water that adversely impact human health or the environment.  Receiving Water Limitation C(2) of the General Permit prohibits storm water discharges that cause or contribute to an exceedance of any applicable water quality standards contained in a Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan.

18.     The General Permit requires that facility operators "investigate the facility to identify all non-storm water discharges and their sources.  As part of this investigation, all drains (inlets and outlets) shall be evaluated to identify whether they connect to the storm drain system.  All non-storm water discharges shall be described.  This shall include the source, quantity, frequency, and characteristics of the non-storm water discharges and associated drainage area."  Section A(6)(a)(v). The General Permit authorizes certain non-storm water discharges providing that the non-storm water discharges are in compliance with Regional Board requirements; that the non-storm water discharges are in compliance with local agency ordinances and/or requirements; that best management practices are included in the Storm Water Pollution Prevention Plan to (1) prevent or reduce the contact of non-storm water discharges with significant materials or equipment and (2) minimize, to the extent practicable, the flow or volume of non-storm water discharges; that the non-storm water discharges do not contain significant quantities of pollutants; and that the monitoring program includes quarterly visual observations of each non-storm water discharge and its sources to ensure that BMPs are being implemented and are effective (Special Conditions D).  Section B(3) of the General Permit requires dischargers to conduct visual observations of all drainage areas for the presence of non-storm water discharges, to observe the non-storm water discharges, and maintain records of such observations.

19.     In addition to absolute prohibitions, the General Permit contains a variety of substantive and procedural requirements that dischargers must meet.  Facilities discharging, or

COMPLAINT

1    having the potential to discharge, storm water associated with industrial activity that have not

2    obtained an individual NPDES permit must apply for coverage under the State's General Permit by

3    filing a Notice of Intent to Comply ("NOI").  The General Permit requires existing dischargers to

4    have filed their NOIs before March 30, 1992.

5        20.    Dischargers must develop and implement a Storm Water Pollution Prevention Plan

6    ("SWPPP").  The SWPPP must describe storm water control facilities and measures that comply

7    with the BAT and BCT standards.  The General Permit requires that an initial SWPPP has been

8    developed and implemented before October 1, 1992.  The SWPPP must, among other requirements,

9    identify and evaluate sources of pollutants associated with industrial activities that may affect the

10   quality of storm and non-storm water discharges from the facility and identify and implement site-

11   specific best management practices ("BMPs") to reduce or prevent pollutants associated with

12   industrial activities in storm water and authorized non-storm water discharges (Section A(2)).  The

13   SWPPP's BMPs must implement BAT and BCT (Section B(3)).  The SWPPP must include: a

14   description of individuals and their responsibilities for developing and implementing the SWPPP

15   (Section A(3)); a site map showing the facility boundaries, storm water drainage areas with flow

16   pattern and nearby water bodies, the location of the storm water collection, conveyance and

17   discharge system, structural control measures, impervious areas, areas of actual and potential

18   pollutant contact, and areas of industrial activity (Section A(4)); a list of significant materials

19   handled and stored at the site (Section A(5)); a description of potential pollutant sources including

20   industrial processes, material handling and storage areas, dust and particulate generating activities,

21   and a description of significant spills and leaks, a list of all non-storm water discharges and their

22   sources, and a description of locations where soil erosion may occur (Section A(6)).  The SWPPP

23   must include an assessment of potential pollutant sources at the Facility and a description of the

24   BMPs to be implemented at the Facility that will reduce or prevent pollutants in storm water

25   discharges and authorized non-storm water discharges, including structural BMPs where non-

26   structural BMPs are not effective (Section A(7), (8)).  The SWPPP must be evaluated to ensure

27   effectiveness and must be revised where necessary (Section A(9),(10)).

28       21.    Section C(3) of the General Permit requires a discharger to prepare and submit a

COMPLAINT

6

report to the Regional Board describing changes it will make to its current BMPs in order to prevent or reduce any pollutant in its storm water discharges that is causing or contributing to an exceedance of water quality standards.  Once approved by the Regional Board, the additional BMPs must be incorporated into the Facility's SWPPP.  The report must be submitted to the Regional Board no later than 60 days from the date the discharger first learns that its discharge is causing or contributing to an exceedance of an applicable water quality standard.  Section C(4)(a).

22.     Section C(11)(d) of the General Permit's Standard Provisions requires dischargers to report any noncompliance to the Regional Board.  *See also* Section E(6). Section A(9) of the General Permit requires an annual evaluation of storm water controls including the preparation of an evaluation report and implementation of any additional measures in the SWPPP to respond to the monitoring results and other inspection activities.

23.     The General Permit requires dischargers commencing industrial activities before October 1, 1992, to develop and implement an adequate written monitoring and reporting program no later than October 1, 1992.  Existing facilities covered under the General Permit must implement all necessary revisions to their monitoring programs no later than August 1, 1997.

24.     As part of their monitoring program, dischargers must identify all storm water discharge locations that produce a significant storm water discharge, evaluate the effectiveness of BMPs in reducing pollutant loading, and evaluate whether pollution control measures set out in the SWPPP are adequate and properly implemented.  Dischargers must conduct visual observations of these discharge locations for at least one storm per month during the wet season (October through May) and record their findings in their Annual Report.  Dischargers must also collect and analyze storm water samples from at least two storms per year.  Section B(5)(a) of the General Permit requires that dischargers "shall collect storm water samples during the first hour of discharge from (1) the first storm event of the wet season, and (2) at least one other storm event in the wet season.  All storm water discharge locations shall be sampled."  Section B(5)(c)(i) requires dischargers to sample and analyze during the wet season for basic parameters, such as pH, total suspended solids, electrical conductance, and total organic content or oil & grease, as well as certain industry-specific parameters.  Section B(5)(c)(ii) requires dischargers to sample for toxic chemicals and other

COMPLAINT

pollutants likely to be in the storm water discharged from the facility.  Section B(5)(c)(iii) requires discharges to sample for parameters dependent on a facility's standard industrial classification ("SIC") code.  Dischargers must also conduct dry season visual observations to identify sources of non-storm water pollution.  Section B(7)(a) indicates that the visual observations and samples must represent the "quality and quantity of the facility's storm water discharges from the storm event." Section B(7)(c) requires that "if visual observation and sample collection locations are difficult to observe or sample…facility operators shall identify and collect samples from other locations that represent the quality and quantity of the facility's storm water discharges from the storm event."

25.     Section B(14) of the General Permit requires dischargers to submit an annual report by July 1 of each year to the executive officer of the relevant Regional Board.  The annual report must be signed and certified by an appropriate corporate officer.  Sections B(14), C(9), (10).  Section A(9)(d) of the General Permit requires the discharger to include in their annual report an evaluation of their storm water controls, including certifying compliance with the General Permit.  *See also* Sections C(9), C(10) and B(14).

26.     The General Permit does not provide for any mixing zones by dischargers.  The General Permit does not provide for any dilution credits to be applied by dischargers.

27.     The Regional Board has established water quality standards for Suisun Bay in the Water Quality Control Plan for the San Francisco Bay Basin, generally referred to as the Basin Plan.

28.     The Basin Plan includes a narrative toxicity standard which states that "[a]ll waters shall be maintained free of toxic substances in concentrations that are lethal or that produce other detrimental responses in aquatic organisms."

29.     The Basin Plan provides that "[s]urface waters shall not contain concentrations of chemical constituents in amounts that adversely affect any designated beneficial use."

30.     The Basin Plan provides that "[t]he suspended sediment load and suspended sediment discharge rate of surface waters shall not be altered in such a manner as to cause nuisance or adversely affect beneficial uses."

31.     The Basin Plan provides that "[w]aters shall be free of changes in turbidity that cause nuisance or adversely affect beneficial uses."

COMPLAINT

32.     The Basin Plan provides that "[w]aters shall be free of coloration that causes nuisance or adversely affects beneficial uses."

33.     The Basin Plan provides that "[w]aters shall not contain floating material, including solids, liquids, foams, and scum, in concentrations that cause nuisance or adversely affect beneficial uses."

34.     The Basin Plan includes a narrative oil and grease standard which states that "[w]aters shall not contain oils, greases, waxes, or other materials in concentrations that result in a visible film or coating on the surface of the water or on objects in the water, that cause nuisance, or otherwise adversely affect beneficial uses."

35.     The Basin Plan provides that "[w]aters shall not contain suspended material in concentrations that cause nuisance or adversely affect beneficial uses."

36.     The Basin Plan provides that "[w]aters shall not contain taste- or odor-producing substances in concentrations that impart undesirable tastes or odors to fish flesh or other edible products of aquatic origin, that cause nuisance, or that adversely affect beneficial uses."

37.     The Basin Plan provides that "[t]he pH shall not be depressed below 6.5 nor raised above 8.5."

38.     The EPA has established Parameter Benchmark Values as guidelines for determining whether a facility discharging industrial storm water has implemented the requisite BAT and BCT. EPA has established Parameter Benchmark Values for the following parameters, among others: pH – 6.0-9.0 units; total suspended solids ("TSS") – 100 mg/L, oil and grease ("O&G") – 15 mg/L, and iron – 1.0 mg/L.

39.     Section 505(a)(1) and Section 505(f) of the Act provide for citizen enforcement actions against any "person," including individuals, corporations, or partnerships, for violations of NPDES permit requirements.  33 U.S.C. §§1365(a)(1) and (f), § 1362(5).  An action for injunctive relief under the Act is authorized by 33 U.S.C. § 1365(a).  Violators of the Act are also subject to an assessment of civil penalties of up to $37,500 per day per violation for all violations pursuant to Sections 309(d) and 505 of the Act, 33 U.S.C. §§ 1319(d), 1365.  *See also* 40 C.F.R. §§ 19.1 - 19.4.

COMPLAINT

# V.       STATEMENT OF FACTS

40.      Defendants operate a truck maintenance facility located at 441 North Buchanan Circle in Pacheco, California.  On information and belief, CSPA alleges that the Facility is engaged in the maintenance and fueling of waste collection vehicles.  The Facility falls within SIC Code 4953.  The Facility covers approximately 4 acres, the majority of which is paved.  On information and belief, Plaintiff alleges that there are at least four large buildings located on the property. Plaintiff is informed and believes, and thereupon alleges that maintenance of vehicles is conducted both inside and outside of these buildings.

41.      Defendant channels and collects storm water falling on the Facility through a series of storm water drains that lead to at least one storm water outfall.  The Facility's outfall or outfalls discharge into channels that flow into Grayson Creek, which flows into Pacheco Creek, which then flows into Suisun Bay.

42.      On information and belief, Plaintiff alleges that the industrial activities at the site include the fueling, painting and maintenance of vehicles and bins used in waste collection activities. These activities take place outside and are exposed to rainfall.  These areas are exposed to storm water and storm flows due to the lack of overhead coverage, berms, and other storm water controls.

43.      Fueling stations and vehicles are operated and stored at the Facility in areas exposed to storm water flows.  Plaintiff is informed and believes, and thereupon alleges, that such machinery and equipment leak contaminants such as oil, grease, diesel fuel, anti-freeze and hydraulic fluids that are exposed to storm water flows, and that such machinery and equipment track sediment and other contaminants throughout the Facility.  Vehicles enter and exit the Facility directly from and to North Buchannan Circle.  On information and belief, Plaintiff alleges that trucks leaving the Facility track substantial amounts of material onto North Buchannan Circle.  During rain events, material that has been tracked from the Facility onto public roads during dry weather is transported via storm water to storm drain channels.

44.      Plaintiff is informed and believes, and thereupon alleges that the storm water flows easily over the surface of the Facility, collecting suspended sediment, dirt, metals, oils, grease, and

other pollutants as it flows toward the storm water drains.  Storm water and any pollutants contained in that storm water entering the drains flows directly to the Facility's outfall or outfalls which discharge into channels that flow into Suisun Bay.

45.     The management practices at the Facility are wholly inadequate to prevent the sources of contamination described above from causing the discharge of pollutants to waters of the United States.  The Facility lacks sufficient structural controls such as grading, berming, roofing, containment, or drainage structures to prevent rainfall and storm water flows from coming into contact with these and other exposed sources of contaminants.  The Facility lacks sufficient structural controls to prevent the discharge of water once contaminated.  The Facility lacks adequate storm water pollution treatment technologies to treat storm water once contaminated.  The Facility lacks controls to prevent the tracking and flow of pollutants onto adjacent public roads.

46.     Since at least October 13, 2009, Defendants have taken samples or arranged for samples to be taken of storm water discharges at the Facility.  The sample results were reported in the Facility's annual reports submitted to the Regional Board.  Defendants certified each of those annual reports pursuant to Sections A and C of the General Permit.

47.     Since at least October 13, 2009, the Facility has detected TSS and O&G in storm water discharged from the Facility.  Since at least March 15, 2011, the Facility has detected iron in storm water discharged from the Facility.  Levels of these pollutants detected in the Facility's storm water have been in excess of EPA's numeric parameter benchmark values.

48.     The following storm water discharges on the following dates contained observations of pollutants in violation of narrative water quality standards established in the Basin Plan.  These observations are in violation of Discharge Prohibitions A(1) and A(2) and Receiving Water Limitations C(1) and C(2) of the General Permit and are evidence of ongoing violations of Effluent Limitation B(3) of the General Permit.  They include violations of the narrative discharge standards for floating material, suspended material, color, and oil and grease.

///

///

///

COMPLAINT

11

| Date | Parameter | Observation | Basin Plan Narrative Water Quality Objective | Location (as identified by the Facility) |
|---|---|---|---|---|
| 2/19/2013 | Narrative | Oil sheen | Basin Plan at 3.3.7 | SD-1 |
| 2/19/2013 | Narrative | Cloudy brown color | Basin Plan at 3.3.4 | SS-1 |
| 2/19/2013 | Narrative | Oil sheen | Basin Plan at 3.3.7 | SD-3 |
| 2/19/2013 | Narrative | Oil sheen | Basin Plan at 3.3.7 | SD-4 |
| 2/19/2013 | Narrative | Oil sheen | Basin Plan at 3.3.7 | SD-5 |
| 1/23/2013 | Narrative | Oil sheen | Basin Plan at 3.3.7 | SD-1 |
| 1/23/2013 | Narrative | Cloudy brown color | Basin Plan at 3.3.4 | SS-1 |
| 1/23/2013 | Narrative | Oil sheen | Basin Plan at 3.3.7 | SD-3 |
| 1/23/2013 | Narrative | Oil sheen | Basin Plan at 3.3.7 | SD-4 |
| 1/23/2013 | Narrative | Oil sheen | Basin Plan at 3.3.7 | SD-5 |
| 12/14/2012 | Narrative | Oil sheen | Basin Plan at 3.3.7 | SD-1 |
| 12/14/2012 | Narrative | Cloudy brown color | Basin Plan at 3.3.4 | SS-1 |
| 12/14/2012 | Narrative | Oil sheen | Basin Plan at 3.3.7 | SD-3 |
| 12/14/2012 | Narrative | Oil sheen | Basin Plan at 3.3.7 | SD-4 |
| 12/14/2012 | Narrative | Oil sheen | Basin Plan at 3.3.7 | SD-5 |
| 11/28/2012 | Narrative | Oil sheen | Basin Plan at 3.3.7 | SD-1 |
| 11/28/2012 | Narrative | Cloudy brown color | Basin Plan at 3.3.4 | SS-1 |
| 11/28/2012 | Narrative | Oil sheen | Basin Plan at 3.3.7 | SD-3 |
| 11/28/2012 | Narrative | Oil sheen | Basin Plan at 3.3.7 | SD-4 |
| 11/28/2012 | Narrative | Oil sheen | Basin Plan at 3.3.7 | SD-5 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COMPLAINT

| | | | | |
|---|---|---|---|---|
| 10/23/2012 | Narrative | Oil sheen | Basin Plan at 3.3.7 | SD-1 |
| 10/23/2012 | Narrative | Cloudy brown color | Basin Plan at 3.3.4 | SS-1 |
| 10/23/2012 | Narrative | Oil sheen | Basin Plan at 3.3.7 | SD-3 |
| 10/23/2012 | Narrative | Oil sheen | Basin Plan at 3.3.7 | SD-4 |
| 10/23/2012 | Narrative | Oil sheen | Basin Plan at 3.3.7 | SD-5 |
| 4/10/2012 | Narrative | Cloudy; Oil sheen | Basin Plan at 3.3.14 / Basin Plan at 3.3.7 | Main drain outlet Drain in parking lot |
| 3/13/2012 | Narrative | Cloudy; Oil sheen | Basin Plan at 3.3.14 / Basin Plan at 3.3.7 | Main drain outlet Drain in parking lot |
| 1/20/2012 | Narrative | Cloudy; Oil sheen | Basin Plan at 3.3.14 / Basin Plan at 3.3.7 | Main drain outlet Drain in parking lot |
| 11/9/2011 | Narrative | Cloudy; Oil sheen | Basin Plan at 3.3.14 / Basin Plan at 3.3.7 | Main drain outlet Drain in parking lot |
| 10/6/2011 | Narrative | Cloudy; Oil sheen | Basin Plan at 3.3.14 / Basin Plan at 3.3.7 | Main drain outlet Drain in parking lot |
| 5/16/2011 | Narrative | Cloudy; Oil sheen | Basin Plan at 3.3.14 / Basin Plan at 3.3.7 | Main Storm Drain Outlet / Yard Drain at Employee Parking Lot |
| 4/14/2011 | Narrative | Cloudy; Oil sheen | Basin Plan at 3.3.14 / Basin Plan at 3.3.7 | Main Storm Drain Outlet / |

COMPLAINT

| | | | | Yard Drain at Employee Parking Lot |
|---|---|---|---|---|
| 3/15/2011 | Narrative | Cloudy; Oil sheen | Basin Plan at 3.3.14 / Basin Plan at 3.3.7 | Main Storm Drain Outlet / Yard Drain at Employee Parking Lot |
| 2/16/2011 | Narrative | Cloudy; Oil sheen | Basin Plan at 3.3.14 / Basin Plan at 3.3.7 | Main Storm Drain Outlet / Yard Drain at Employee Parking Lot |
| 1/13/2011 | Narrative | Cloudy; Oil sheen | Basin Plan at 3.3.14 / Basin Plan at 3.3.7 | Main Storm Drain Outlet / Yard Drain at Employee Parking Lot |
| 12/8/2010 | Narrative | Cloudy; Oil sheen | Basin Plan at 3.3.14 / Basin Plan at 3.3.7 | Main Storm Drain Outlet / Yard Drain at Employee Parking Lot |
| 5/21/2010 | Narrative | Cloudy / Floating Objects | Basin Plan at 3.3.14 / Basin Plan at 3.3.6 | #1 Main Yard Drain |
| 5/21/2010 | Narrative | Oil sheen | Basin Plan at 3.3.7 | # Drain at Shop Area |

COMPLAINT

| | | | | |
|---|---|---|---|---|
| 5/21/2010 | Narrative | Cloudy / Floating Objects | Basin Plan at 3.3.14 / Basin Plan at 3.3.6 | # Drain at Back Parking Lot |
| 4/27/2010 | Narrative | Cloudy / Floating Objects | Basin Plan at 3.3.14 / Basin Plan at 3.3.6 | #1 Main Yard Drain |
| 4/27/2010 | Narrative | Oil sheen | Basin Plan at 3.3.7 | #2 Drain at Shop Area |
| 4/27/2010 | Narrative | Cloudy / Floating Objects | Basin Plan at 3.3.14 / Basin Plan at 3.3.6 | #3 Drain at Back Parking Lot |
| 3/12/2010 | Narrative | Cloudy / Floating Objects | Basin Plan at 3.3.14 / Basin Plan at 3.3.6 | #1 Main Yard Drain |
| 3/12/2010 | Narrative | Oil sheen | Basin Plan at 3.3.7 | #2 Drain at Shop Area |
| 3/12/2010 | Narrative | Cloudy / Floating Objects | Basin Plan at 3.3.14 / Basin Plan at 3.3.6 | #3 Drain at Back Parking Lot |
| 2/26/2010 | Narrative | Cloudy / Floating Objects | Basin Plan at 3.3.14 / Basin Plan at 3.3.6 | #1 Main Yard Drain |
| 2/26/2010 | Narrative | Oil sheen | Basin Plan at 3.3.7 | #2 Drain at Shop Area |
| 2/26/2010 | Narrative | Cloudy / Floating Objects | Basin Plan at 3.3.14 / Basin Plan at 3.3.6 | #3 Drain at Back Parking Lot |
| 1/21/2010 | Narrative | Cloudy / | Basin Plan at 3.3.14 / | #1 Main Yard |

COMPLAINT

| | | Floating Objects | Basin Plan at 3.3.6 | Drain |
|---|---|---|---|---|
| 1/21/2010 | Narrative | Oil sheen | Basin Plan at 3.3.7 | #2 Drain at Shop Area |
| 1/21/2010 | Narrative | Cloudy / Floating Objects | Basin Plan at 3.3.14 / Basin Plan at 3.3.6 | #3 Drain at Back Parking Lot |
| 12/11/2009 | Narrative | Cloudy / Floating Objects | Basin Plan at 3.3.14 / Basin Plan at 3.3.6 | #1 Main Yard Drain |
| 12/11/2009 | Narrative | Oil sheen | Basin Plan at 3.3.7 | #2 Drain at Shop Area |
| 12/11/2009 | Narrative | Cloudy / Floating Objects | Basin Plan at 3.3.14 / Basin Plan at 3.3.6 | #3 Drain at Back Parking Lot |
| 11/6/2009 | Narrative | Cloudy / Floating Objects | Basin Plan at 3.3.14 / Basin Plan at 3.3.6 | #1 Main Yard Drain |
| 11/6/2009 | Narrative | Oil sheen | Basin Plan at 3.3.7 | #2 Drain at Shop Area |
| 11/6/2009 | Narrative | Cloudy / Floating Objects | Basin Plan at 3.3.14 / Basin Plan at 3.3.6 | #3 Drain at Back Parking Lot |
| 10/13/2009 | Narrative | Cloudy / Floating Objects | Basin Plan at 3.3.14 / Basin Plan at 3.3.6 | #1 Main Yard Drain |
| 10/13/2009 | Narrative | Oil sheen | Basin Plan at 3.3.7 | #2 Drain at Shop Area |

COMPLAINT

| 10/13/2009 | Narrative | Cloudy / Floating Objects | Basin Plan at 3.3.14 / Basin Plan at 3.3.6 | #3 Drain at Back Parking Lot |
|---|---|---|---|---|

49.     The level of total suspended solids in storm water detected by the Facility has exceeded the benchmark value for total suspended solids of 100 mg/L established by EPA.  For example, on January 23, 2013, the level of total suspended solids measured by Defendants at the "Effluent Filter" outfall was 1200 mg/L.  That level of total suspended solids is 12 times the benchmark value for total suspended solids established by EPA.  The Facility also has measured levels of total suspended solids in storm water discharged from the Facility in excess of EPA's benchmark value of 100 mg/L for total suspended solids in nearly every other storm water sample taken at the Facility for the past five years, including November 28, 2012; April 10, 2012; October 4, 2011; and March 15, 2011.

50.     The levels of iron in storm water detected by the Facility have exceeded the benchmark value for iron of 1.0 mg/L established by EPA.  For example, on January 23, 2013, the level of iron measured by Defendants at the "Effluent Filter" outfall was 54 mg/L.  That level of iron is 54 times the benchmark value for iron established by EPA.  The Facility also has measured levels of iron in storm water discharged from the Facility in excess of EPA's benchmark value of 1.0 mg/L for iron in every other storm water sample taken at the Facility for the past five years (when it has monitored for iron), including November 28, 2012; April 10, 2012; October 4, 2011; and March 15, 2011.

51.     The levels of oil & grease in storm water detected by the Facility have exceeded the benchmark value for oil & grease of 15 mg/L established by EPA.  For example, on October 13, 2009, the level of oil & grease measured by Defendants at the "Post treatment" outfall was 16.3 mg/L.  The Facility also has measured levels of oil & grease in storm water discharged from the Facility in excess of EPA's benchmark value of 15 mg/L on January 23, 2013; November 28, 2012; April 10, 2012; March 15, 2011; December 8, 2010; and January 21, 2010.

52.     On information and belief, Plaintiff alleges that Defendants have failed to monitor

COMPLAINT

17

storm water discharges from all of the Facility's outfalls.  The Facility's 2012-2013 Annual Report includes storm water sampling results from six different locations.  These outfalls were not sampled during the 2009-2010, 2010-2011, and 2011-2012 wet seasons.

53.     On information and belief, Plaintiff alleges that Defendants failed to analyze the Facility's storm water discharges for iron during the 2009-2010 wet season.  Because the Facility has an SIC Code of 4953, it is required to analyze its storm water samples for iron pursuant to Table D of the General Permit.

54.     On information and belief, Plaintiff alleges that since at least June 27, 2009, Defendants have failed to implement BAT and BCT at the Facility for its discharges of TSS, O&G, iron, and other un-monitored pollutants.  Section B(3) of the General Permit requires that Defendants implement BAT for toxic and nonconventional pollutants and BCT for conventional pollutants by no later than October 1, 1992.  As of the date of this Complaint, Defendant has failed to implement BAT and BCT.

55.     On information and belief, Plaintiff alleges that since at least June 27, 2009, Defendants have failed to implement an adequate Storm Water Pollution Prevention Plan for the Facility.  Plaintiff is informed and believes, and thereupon alleges, that the SWPPP prepared for the Facility does not set forth site-specific best management practices for the Facility that are consistent with BAT or BCT for the Facility.  Plaintiff is informed and believes, and thereupon alleges, that the SWPPP prepared for the Facility does not include an adequate assessment of potential pollutant sources, structural pollutant control measures employed by the Defendants, a list of actual and potential areas of pollutant contact, or an adequate description of best management practices to be implemented at the Facility to reduce pollutant discharges.  According to information available to CSPA, Defendants' SWPPP has not been evaluated to ensure its effectiveness and revised where necessary to further reduce pollutant discharges.  Plaintiff is informed and believes, and thereupon alleges, that the SWPPP does not include each of the mandatory elements required by Section A of the General Permit.

56.     Information available to CSPA indicates that as a result of these practices, storm water containing excessive pollutants is being discharged during rain events from the Facility

COMPLAINT

18

directly to channels that flow into Suisun Bay.

57.     Plaintiff is informed and believes, and thereupon alleges, that, Defendants have failed and continues to fail to alter the Facility's SWPPP and site-specific BMPs consistent with Section A(9) of the General Permit.

58.     Plaintiff is informed and believes that Defendants failed to submit to the Regional Board a true and complete annual report certifying compliance with the General Permit since at least June 8, 2010.  Pursuant to Sections A(9)(d), B(14), and C(9), (10) of the General Permit, Defendant must submit an annual report, that is signed and certified by the appropriate corporate officer, outlining the Facility's storm water controls and certifying compliance with the General Permit. Plaintiff is informed and believes, and thereupon alleges, that Defendants have signed incomplete annual reports that purported to comply with the General Permit when there was significant noncompliance at the Facility.

59.     Information available to Plaintiff indicates that Defendants have not fulfilled the requirements set forth in the General Permit for discharges from the Facility due to the continued discharge of contaminated storm water.  Plaintiff is informed and believes, and thereupon alleges, that all of the violations alleged in this Complaint are ongoing and continuing.

## VI.     CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
**Failure to Implement the Best Available and
Best Conventional Treatment Technologies
(Violations of Permit Conditions and the Act, 33 U.S.C. §§ 1311, 1342)**

60.     Plaintiff re-alleges and incorporates all of the preceding paragraphs as if fully set forth herein.

61.     The General Permit's SWPPP requirements and Effluent Limitation B(3) require dischargers to reduce or prevent pollutants in their storm water discharges through implementation of BAT for toxic and nonconventional pollutants and BCT for conventional pollutants.  Defendants have failed to implement BAT and BCT at the Facility for its discharges of TSS, O&G, iron, and other un-monitored pollutants in violation of Effluent Limitation B(3) of the General Permit.

62.     Each day since June 27, 2009, that Defendants have failed to develop and implement

COMPLAINT

1   BAT and BCT in violation of the General Permit is a separate and distinct violation of the General

2   Permit and Section 301(a) of the Act, 33 U.S.C. § 1311(a).

3         63.     Defendants have been in violation of the BAT/BCT requirements every day since June

4   27, 2009.  Defendants continue to be in violation of the BAT/BCT requirements each day that it fails

5   to develop and fully implement BAT/BCT at the Facility.

6                           **SECOND CAUSE OF ACTION**

7              **Discharges of Contaminated Storm Water**
             **in Violation of Permit Conditions and the Act**

8              **(Violations of 33 U.S.C. §§ 1311, 1342)**

9         64.     Plaintiff re-alleges and incorporates all of the preceding paragraphs as if fully set

10   forth herein.

11         65.     Discharge Prohibition A(2) of the General Permit requires that storm water discharges

12   and authorized non-storm water discharges shall not cause or threaten to cause pollution,

13   contamination, or nuisance.  Receiving Water Limitations C(1) and C(2) of the General Permit require

14   that storm water discharges and authorized non-storm water discharges shall not adversely impact

15   human health or the environment, and shall not cause or contribute to a violation of any water quality

16   standards contained in a Statewide Water Quality Control Plan or the applicable Regional Board's

17   Basin Plan.

18         66.     Plaintiff is informed and believes, and thereupon alleges, that since at least June 27,

19   2009, Defendants have been discharging polluted storm water from the Facility in excess of

20   applicable narrative water quality standards in violation of the Discharge Prohibition A(2) of the

21   General Permit.

22         67.     During every rain event, storm water flows freely over exposed materials, waste

23   products, and other accumulated pollutants at the Facility, becoming contaminated with floating

24   material, suspended material, and oil and grease, and, on information and belief, other un-monitored

25   pollutants, at levels above applicable narrative water quality standards.  The storm water then flows

26   untreated from the Facility into channels that flow into Grayson Creek, which flows into Pacheco

27   Creek, which then flows into Suisun Bay.

28         68.     Plaintiff is informed and believes, and thereupon alleges, that these discharges of

COMPLAINT

1   contaminated storm water are causing or contributing to the violation of the applicable narrative water

2   quality standards in a Statewide Water Quality Control Plan and/or the applicable Regional Board's

3   Basin Plan in violation of Receiving Water Limitation C(2) of the General Permit.

4        69.    Plaintiff is informed and believes, and thereupon alleges, that these discharges of

5   contaminated storm water are adversely affecting human health and the environment in violation of

6   Receiving Water Limitation C(1) of the General Permit.

7        70.    Every day since at least June 27, 2009, that Defendants have discharged and continues

8   to discharge polluted storm water from the Facility in violation of the General Permit is a separate and

9   distinct violation of Section 301(a) of the Act, 33 U.S.C. § 1311(a).  These violations are ongoing and

10  continuous.

### THIRD CAUSE OF ACTION
**Failure to Prepare, Implement, Review, and Update**
**an Adequate Storm Water Pollution Prevention Plan**
**(Violations of Permit Conditions and the Act, 33 U.S.C. §§ 1311, 1342)**

14       71.    Plaintiff re-alleges and incorporates all of the preceding paragraphs as if fully set

15  forth herein.

16       72.    Section A and Provision E of the General Permit requires dischargers of storm water

17  associated with industrial activity to develop and implement an adequate SWPPP no later than

18  October 1, 1992.

19       73.    Defendants have failed to develop and implement an adequate SWPPP for the

20  Facility.  Defendants' ongoing failure to develop and implement an adequate SWPPP for the Facility

21  is evidenced by, *inter alia*, Defendants' outdoor performance of vehicle maintenance and fueling

22  without appropriate best management practices; the continued exposure and tracking of waste resulting

23  from the operation or maintenance of vehicles at the site; the failure to either treat storm water prior to

24  discharge or to implement effective containment practices; and the continued discharge of storm

25  water pollutants from the Facility at levels in excess of EPA benchmark values and Basin Plan

26  narrative water quality standards.

27       74.    Defendants have failed to adequately update the Facility's SWPPP in response to the

28  analytical results of the Facility's storm water monitoring.

COMPLAINT

75.     Each day since June 27, 2009, that Defendants have failed to develop, implement and update an adequate SWPPP for the Facility is a separate and distinct violation of the General Permit and Section 301(a) of the Act, 33 U.S.C. § 1311(a).

76.     Defendants have been in violation of the SWPPP requirements every day since June 27, 2009.  Defendants continue to be in violation of the SWPPP requirements each day that it fails to develop and fully implement an adequate SWPPP for the Facility.

### FOURTH CAUSE OF ACTION
**Failure to Develop and Implement an Adequate Monitoring and Reporting Program**
**(Violation of Permit Conditions and the Act, 33 U.S.C. §§ 1311, 1342)**

77.     Plaintiff re-alleges and incorporates all of the preceding paragraphs as if fully set forth herein.

78.     Section B of the General Permit requires dischargers of storm water associated with industrial activity to have developed and be implementing a monitoring and reporting program (including, inter alia, sampling and analysis of discharges) no later than October 1, 1992.

79.     Defendants have failed to develop and implement an adequate monitoring and reporting program for the Facility.  Defendants' ongoing failure to develop and implement an adequate monitoring and reporting program are evidenced by, inter alia, their failure to monitor and sample all storm water discharges from the Facility during the 2009-2010, 2010-2011, and 2011-2012 wet seasons.

80.     Each day since June 27, 2009, that Defendants have failed to develop and implement an adequate monitoring and reporting program for the Facility in violation of the General Permit is a separate and distinct violation of the General Permit and Section 301(a) of the Act, 33 U.S.C. § 1311(a).  The absence of requisite monitoring and analytical results are ongoing and continuous violations of the Act.

### FIFTH CAUSE OF ACTION
**False Certification of Compliance in Annual Report**
**(Violations of Permit Conditions and the Act, 33 U.S.C. §§ 1311, 1342)**

81.     Plaintiff re-alleges and incorporates all of the preceding paragraphs as if fully set forth herein.

COMPLAINT

82.     Defendants have falsely certified compliance with the General Permit in each of the annual reports submitted to the Regional Board since at least June 8, 2010.

83.     Each day since at least June 8, 2010, that Defendants have falsely certified compliance with the General Permit is a separate and distinct violation of the General Permit and Section 301(a) of the Act, 33 U.S.C. § 1311(a).  Defendants continue to be in violation of the General Permit's certification requirement each day that it maintains its false certification of its compliance with the General Permit.

## VII.    **RELIEF REQUESTED**

Wherefore, Plaintiff respectfully requests that this Court grant the following relief:

a.   Declare Defendants to have violated and to be in violation of the Act as alleged herein;

b.   Enjoin Defendants from discharging polluted storm water from the Facility unless authorized by the Permit;

c.   Enjoin Defendants from further violating the substantive and procedural requirements of the Permit;

d.   Order Defendants to immediately implement storm water pollution control and treatment technologies and measures that are equivalent to BAT or BCT and prevent pollutants in the Facility's storm water from contributing to violations of any water quality standards;

e.   Order Defendants to comply with the Permit's monitoring and reporting requirements, including ordering supplemental monitoring to compensate for past monitoring violations;

f.   Order Defendants to prepare a SWPPP consistent with the Permit's requirements and implement procedures to regularly review and update the SWPPP;

g.   Order Defendants to provide Plaintiff with reports documenting the quality and quantity of their discharges to waters of the United States and their efforts to comply with the Act and the Court's orders;

h.   Order Defendants to pay civil penalties of $37,500 per day per violation for all violations of the Act pursuant to Sections 309(d) and 505(a) of the Act, 33 U.S.C. §§ 1319(d), 1365(a)

COMPLAINT

and 40 C.F.R. §§ 19.1 - 19.4;

       i.   Order Defendants to take appropriate actions to restore the quality of waters impaired or adversely affected by their activities;

       j.   Award Plaintiff's costs (including reasonable investigative, attorney, witness, compliance oversight, and consultant fees) as authorized by the Act, 33 U.S.C. § 1365(d); and,

       k.   Award any such other and further relief as this Court may deem appropriate.

Dated: August 26, 2014          Respectfully submitted,

                         LOZEAU DRURY LLP

                         By:    _/s/ Douglas J. Chermak_____
                                 Douglas J. Chermak
                                 Attorneys for Plaintiff
                                 CALIFORNIA SPORTFISHING PROTECTION
                                 ALLIANCE

COMPLAINT

# EXHIBIT A



LOZEAU DRURY LLP

T  510.836.4200   │   410 12th Street, Suite 250   │   www.lozeaudrury.com
F  510.836.4205   │   Oakland, Ca 94607            │   doug@lozeaudrury.com

VIA CERTIFIED MAIL
<u>RETURN RECEIPT REQUESTED</u>

June 18, 2014

Donald W. Slager, President and Chief Executive Officer
Paul Ginochio
Republic Services, Inc.
18500 N. Allied Way
Phoenix, AZ 85054

Paul Ginochio, Operations Manager
Allied Waste Systems
441 N Buchanan Cir.
Pacheco, CA 94553

**Re:    Notice of Violations and Intent to File Suit Under the Federal Water**
**Pollution Control Act**

Dear Mr. Slager and Mr. Ginochio:

I am writing on behalf of the California Sportfishing Protection Alliance ("CSPA") in regard to violations of the Federal Water Pollution Control Act (the "Clean Water Act" or "Act") that CSPA believes are occurring at Republic Service, Inc.'s industrial facility located at 441 N. Buchanan Cir. in Pacheco, California, and operating under the name "Allied Waste Systems" ("Facility"). CSPA is a non-profit public benefit corporation dedicated to the preservation, protection, and defense of the environment, wildlife, and natural resources of the Suisun Bay and other California waters. This letter is being sent to you as the responsible owners, officers, or operators of the Facility (all recipients are hereinafter collectively referred to as "Allied Waste").

This letter addresses Allied Waste's unlawful discharge of pollutants from the Facility to storm drains that flow to Grayson Creek, which flows to Pacheco Creek or Slough and into Suisun Bay ("Bay"). The Facility is discharging storm water pursuant to National Pollutant Discharge Elimination System ("NPDES") Permit No. CA S000001, State Water Resources Control Board ("State Board") Water Quality Order No. 92-12-DWQ as amended by Order No.

Messrs. Slager and Ginochio
Republic Services, Inc.
June 18, 2014
Page 2 of 15

97-03-DWQ (hereinafter "General Permit") .[1]  The WDID identification number for the Facility listed on documents submitted to the Regional Water Quality Control Board, San Francisco Bay Region ("Regional Board"), is 2 07I015302.  The Facility is engaged in ongoing violations of the substantive and procedural requirements of the General Permit.

Section 505(b) of the Clean Water Act requires a citizen to give notice of intent to file suit sixty (60) days prior to the initiation of a civil action under Section 505(a) of the Act.  33 U.S.C. § 1365(a).  Notice must be given to the alleged violator, the U.S. Environmental Protection Agency ("EPA"), and the State in which the violations occur.

As required by the Clean Water Act, this Notice of Violations and Intent to File Suit provides notice of the violations that have occurred, and continue to occur, at the Facility. Consequently, Allied Waste is hereby placed on formal notice by CSPA that, after the expiration of sixty days from the date of this Notice of Violations and Intent to Sue, CSPA intends to file suit in federal court against Allied Waste under Section 505(a) of the Clean Water Act, 33 U.S.C. § 1365(a), for violations of the Clean Water Act and the General Permit.  These violations are described more extensively below.

## I.      Background.

On July 30, 1999, the State Board approved Allied Waste's Notice of Intent to Comply With the Terms of the General Permit to Discharge Storm Water Associated with Industrial Activity ("NOI").  In its NOI, Allied Waste certifies that the Facility is classified under SIC code 4953.  The Facility collects and discharges storm water from its 4-acre industrial site through at least one outfall that discharge into channels that flow into Grayson Creek, which flows into Pacheco Creek, which then flows into the Bay.

The Regional Board has identified beneficial uses of the Bay region's waters and established water quality standards for Grayson Creek, Pacheco Creek, and the Bay in the "Water Quality Control Plan for the San Francisco Bay Basin," generally referred to as the "Basin Plan."  *See* http://www.waterboards.ca.gov/sanfranciscobay/basin_planning.shtml. The beneficial uses of these waters include water contact recreation, noncontact water recreation, wildlife habitat, preservation of rare and endangered species, commercial and sportfishing, estuarine habitat, fish migration, cold freshwater habitat, and warm freshwater habitat.  The noncontact water recreation use is defined as "[u]ses of water for recreational activities involving proximity to water, but not normally involving contact with water where water ingestion is reasonably possible.  These uses include, but are not limited to, picnicking, sunbathing, hiking,

---

[1] On April 1, 2014, the State Board reissued the General Permit, continuing its mandate that industrial facilities implement the best available technology economically achievable ("BAT") and best conventional pollutant control technology ("BCT") and, in addition, establishing numeric action levels mandating additional pollution control efforts.  State Board Order 2014-0057-DWQ.  The new permit, however, does not go into effect until July 1, 2015.  Until that time, the current General Permit remains in full force and effect.

Messrs. Slager and Ginochio
Republic Services, Inc.
June 18, 2014
Page 3 of 15

beachcombing, camping, boating, tide pool and marine life study, hunting, sightseeing, or aesthetic enjoyment in conjunction with the above activities.  Water quality considerations relevant to non-contact water recreation, such as hiking, camping, or boating, and those activities related to tide pool or other nature studies require protection of habitats and aesthetic features." *Id.* at 2.1.16.  Visible pollution, including visible sheens and cloudy or muddy water from industrial areas, impairs people's use of Grayson Creek, Pacheco Creek, and the Bay for water contact recreation and noncontact water recreation.

The Basin Plan establishes water quality standards for the Bay and its tributaries.  The Basin Plan includes a narrative toxicity standard which states that "[a]ll waters shall be maintained free of toxic substances in concentrations that are lethal or that produce other detrimental responses in aquatic organisms."  *Id.* at 3.3.18.  The Basin Plan provides that "[s]urface waters shall not contain concentrations of chemical constituents in amounts that adversely affect any designated beneficial use."  *Id.* at 3.3.21.  The Basin Plan provides that "[w]aters shall not contain suspended material in concentrations that cause nuisance or adversely affect beneficial uses."  *Id.* at 3.3.14.  The Basin Plan provides that "[t]he suspended sediment load and suspended sediment discharge rate of surface waters shall not be altered in such a manner as to cause nuisance or adversely affect beneficial uses."  *Id.* at 3.3.12.  The Basin Plan provides that "[w]aters shall be free of changes in turbidity that cause nuisance or adversely affect beneficial uses."  *Id.* at 3.3.19.  The Basin Plan provides that "[w]aters shall not contain taste- or odor-producing substances in concentrations that impart undesirable tastes or odors to fish flesh or other edible products of aquatic origin, that cause nuisance, or that adversely affect beneficial uses."  *Id.* at 3.3.16.  The Basin Plan provides that "[w]aters shall not contain floating material, including solids, liquids, foams, and scum, in concentrations that cause nuisance or adversely affect beneficial uses."  *Id.* at 3.3.6.  The Basin Plan provides that the "pH shall not be depressed below 6.5 nor raised above 8.5."  *Id.* at 3.3.9.  The Basin Plan provides that "[w]aters shall be free of coloration that causes nuisance or adversely affects beneficial uses."  *Id.* at 3.3.4.  The Basin Plain has a narrative oil and grease standard that "[w]aters shall not contain oils, greases, waxes, or other materials in concentrations that result in a visible film or coating on the surface of the water or on objects in the water, that cause nuisance, or that otherwise adversely affect beneficial uses."  *Id.* at 3.3.7.

The EPA has published benchmark levels as guidelines for determining whether a facility discharging industrial storm water has implemented the requisite best available technology economically achievable ("BAT") and best conventional pollutant control technology ("BCT").[2] The following benchmarks have been established for pollutants discharged by Allied Waste: pH – 6.0 - 9.0 units; total suspended solids ("TSS") – 100 mg/L; oil and grease ("O&G") – 15 mg/L; and iron – 1.0 mg/L.

---

[2] The Benchmark Values can be found at:
http://www.epa.gov/npdes/pubs/msgp2008_finalpermit.pdf and
http://cwea.org/p3s/documents/multi-sectorrev.pdf (Last accessed on May 23, 2014).

Notice of Violations and Intent to File Suit

Messrs. Slager and Ginochio
Republic Services, Inc.
June 18, 2014
Page 4 of 15

**II.      Alleged Violations of the Clean Water Act and the General Permit.**

**A.      *Discharges in Violation of the Permit not Subject to BAT/BCT***

Allied Waste has violated and continues to violate the terms and conditions of the General Permit.  Section 402(p) of the Act prohibits the discharge of storm water associated with industrial activities, except as permitted under an NPDES permit such as the General Permit.  33 U.S.C. § 1342.  The General Permit prohibits any discharges of storm water associated with industrial activities or authorized non-storm water discharges that have not been subjected to BAT or BCT.  Effluent Limitation B(3) of the General Permit requires dischargers to reduce or prevent pollutants in their storm water discharges through implementation of BAT for toxic and nonconventional pollutants and BCT for conventional pollutants.  BAT and BCT include both nonstructural and structural measures.  General Permit, Section A(8).  Conventional pollutants are TSS, O&G, pH, biochemical oxygen demand ("BOD"), and fecal coliform.  40 C.F.R. § 401.16.  All other pollutants are either toxic or nonconventional.  *Id.*; 40 C.F.R. § 401.15.

In addition, Discharge Prohibition A(1) of the General Permit prohibits the discharge of materials other than storm water (defined as non-storm water discharges) that discharge either directly or indirectly to waters of the United States.  Discharge Prohibition A(2) of the General Permit prohibits storm water discharges and authorized non-storm water discharges that cause or threaten to cause pollution, contamination, or nuisance.

Receiving Water Limitation C(1) of the General Permit prohibits storm water discharges and authorized non-storm water discharges to surface or groundwater that adversely impact human health or the environment.  Receiving Water Limitation C(2) of the General Permit also prohibits storm water discharges and authorized non-storm water discharges that cause or contribute to an exceedance of any applicable water quality standards contained in a Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan.  The General Permit does not authorize the application of any mixing zones for complying with Receiving Water Limitation C(2).  As a result, compliance with this provision is measured at the Facility's discharge monitoring locations.

Allied Waste has violated and continues to violate the terms and conditions of the General Permit.  In particular, Allied Waste has discharged and continues to discharge storm water with unacceptable levels of TSS, O&G, iron, and other pollutants in violation of the General Permit.  Allied Waste's sampling and analysis results reported to the Regional Board confirm discharges of specific pollutants and materials other than storm water in violation of the Permit provisions listed above.  Self-monitoring reports under the Permit are deemed "conclusive evidence of an exceedance of a permit limitation."  *Sierra Club v. Union Oil*, 813 F.2d 1480, 1492 (9th Cir. 1988).

The following observations of pollutants in storm water discharged from the Facility have violated narrative water quality standards established in the Basin Plan and have thus violated

Messrs. Slager and Ginochio
Republic Services, Inc.
June 18, 2014
Page 5 of 15

Discharge Prohibitions A(1) and A(2) and Receiving Water Limitations C(1) and C(2) and are
evidence of ongoing violations of Effluent Limitation B(3) of the General Permit.

| Date | Parameter | Observation | Basin Plan Narrative Water Quality Objective | Location (as identified by the Facility) |
|---|---|---|---|---|
| 2/19/2013 | Narrative | Oil sheen | Basin Plan at 3.3.7 | SD-1 |
| 2/19/2013 | Narrative | Cloudy brown color | Basin Plan at 3.3.4 | SS-1 |
| 2/19/2013 | Narrative | Oil sheen | Basin Plan at 3.3.7 | SD-3 |
| 2/19/2013 | Narrative | Oil sheen | Basin Plan at 3.3.7 | SD-4 |
| 2/19/2013 | Narrative | Oil sheen | Basin Plan at 3.3.7 | SD-5 |
| 1/23/2013 | Narrative | Oil sheen | Basin Plan at 3.3.7 | SD-1 |
| 1/23/2013 | Narrative | Cloudy brown color | Basin Plan at 3.3.4 | SS-1 |
| 1/23/2013 | Narrative | Oil sheen | Basin Plan at 3.3.7 | SD-3 |
| 1/23/2013 | Narrative | Oil sheen | Basin Plan at 3.3.7 | SD-4 |
| 1/23/2013 | Narrative | Oil sheen | Basin Plan at 3.3.7 | SD-5 |
| 12/14/2012 | Narrative | Oil sheen | Basin Plan at 3.3.7 | SD-1 |
| 12/14/2012 | Narrative | Cloudy brown color | Basin Plan at 3.3.4 | SS-1 |
| 12/14/2012 | Narrative | Oil sheen | Basin Plan at 3.3.7 | SD-3 |
| 12/14/2012 | Narrative | Oil sheen | Basin Plan at 3.3.7 | SD-4 |
| 12/14/2012 | Narrative | Oil sheen | Basin Plan at 3.3.7 | SD-5 |
| 11/28/2012 | Narrative | Oil sheen | Basin Plan at 3.3.7 | SD-1 |
| 11/28/2012 | Narrative | Cloudy brown color | Basin Plan at 3.3.4 | SS-1 |
| 11/28/2012 | Narrative | Oil sheen | Basin Plan at 3.3.7 | SD-3 |
| 11/28/2012 | Narrative | Oil sheen | Basin Plan at 3.3.7 | SD-4 |
| 11/28/2012 | Narrative | Oil sheen | Basin Plan at 3.3.7 | SD-5 |
| 10/23/2012 | Narrative | Oil sheen | Basin Plan at 3.3.7 | SD-1 |
| 10/23/2012 | Narrative | Cloudy brown color | Basin Plan at 3.3.4 | SS-1 |
| 10/23/2012 | Narrative | Oil sheen | Basin Plan at 3.3.7 | SD-3 |
| 10/23/2012 | Narrative | Oil sheen | Basin Plan at 3.3.7 | SD-4 |
| 10/23/2012 | Narrative | Oil sheen | Basin Plan at 3.3.7 | SD-5 |
| 4/10/2012 | Narrative | Cloudy; Oil sheen | Basin Plan at 3.3.14 / Basin Plan at 3.3.7 | Main drain outlet Drain in parking lot |
| 3/13/2012 | Narrative | Cloudy; Oil sheen | Basin Plan at 3.3.14 / Basin Plan at 3.3.7 | Main drain outlet Drain in parking lot |

Messrs. Slager and Ginochio
Republic Services, Inc.
June 18, 2014
Page 6 of 15

| 1/20/2012 | Narrative | Cloudy; Oil sheen | Basin Plan at 3.3.14 / Basin Plan at 3.3.7 | Main drain outlet Drain in parking lot |
|---|---|---|---|---|
| 11/9/2011 | Narrative | Cloudy; Oil sheen | Basin Plan at 3.3.14 / Basin Plan at 3.3.7 | Main drain outlet Drain in parking lot |
| 10/6/2011 | Narrative | Cloudy; Oil sheen | Basin Plan at 3.3.14 / Basin Plan at 3.3.7 | Main drain outlet Drain in parking lot |
| 5/16/2011 | Narrative | Cloudy; Oil sheen | Basin Plan at 3.3.14 / Basin Plan at 3.3.7 | Main Storm Drain Outlet / Yard Drain at Employee Parking Lot |
| 4/14/2011 | Narrative | Cloudy; Oil sheen | Basin Plan at 3.3.14 / Basin Plan at 3.3.7 | Main Storm Drain Outlet / Yard Drain at Employee Parking Lot |
| 3/15/2011 | Narrative | Cloudy; Oil sheen | Basin Plan at 3.3.14 / Basin Plan at 3.3.7 | Main Storm Drain Outlet / Yard Drain at Employee Parking Lot |
| 2/16/2011 | Narrative | Cloudy; Oil sheen | Basin Plan at 3.3.14 / Basin Plan at 3.3.7 | Main Storm Drain Outlet / Yard Drain at Employee Parking Lot |
| 1/13/2011 | Narrative | Cloudy; Oil sheen | Basin Plan at 3.3.14 / Basin Plan at 3.3.7 | Main Storm Drain Outlet / Yard Drain at Employee Parking Lot |
| 12/8/2010 | Narrative | Cloudy; Oil sheen | Basin Plan at 3.3.14 / Basin Plan at 3.3.7 | Main Storm Drain Outlet / Yard Drain at Employee Parking Lot |
| 5/21/2010 | Narrative | Cloudy / Floating Objects | Basin Plan at 3.3.14 / Basin Plan at 3.3.6 | #1 Main Yard Drain |
| 5/21/2010 | Narrative | Oil sheen | Basin Plan at 3.3.7 | # Drain at Shop Area |

Notice of Violations and Intent to File Suit

Messrs. Slager and Ginochio
Republic Services, Inc.
June 18, 2014
Page 7 of 15

| 5/21/2010 | Narrative | Cloudy / Floating Objects | Basin Plan at 3.3.14 / Basin Plan at 3.3.6 | # Drain at Back Parking Lot |
|---|---|---|---|---|
| 4/27/2010 | Narrative | Cloudy / Floating Objects | Basin Plan at 3.3.14 / Basin Plan at 3.3.6 | #1 Main Yard Drain |
| 4/27/2010 | Narrative | Oil sheen | Basin Plan at 3.3.7 | #2 Drain at Shop Area |
| 4/27/2010 | Narrative | Cloudy / Floating Objects | Basin Plan at 3.3.14 / Basin Plan at 3.3.6 | #3 Drain at Back Parking Lot |
| 3/12/2010 | Narrative | Cloudy / Floating Objects | Basin Plan at 3.3.14 / Basin Plan at 3.3.6 | #1 Main Yard Drain |
| 3/12/2010 | Narrative | Oil sheen | Basin Plan at 3.3.7 | #2 Drain at Shop Area |
| 3/12/2010 | Narrative | Cloudy / Floating Objects | Basin Plan at 3.3.14 / Basin Plan at 3.3.6 | #3 Drain at Back Parking Lot |
| 2/26/2010 | Narrative | Cloudy / Floating Objects | Basin Plan at 3.3.14 / Basin Plan at 3.3.6 | #1 Main Yard Drain |
| 2/26/2010 | Narrative | Oil sheen | Basin Plan at 3.3.7 | #2 Drain at Shop Area |
| 2/26/2010 | Narrative | Cloudy / Floating Objects | Basin Plan at 3.3.14 / Basin Plan at 3.3.6 | #3 Drain at Back Parking Lot |
| 1/21/2010 | Narrative | Cloudy / Floating Objects | Basin Plan at 3.3.14 / Basin Plan at 3.3.6 | #1 Main Yard Drain |
| 1/21/2010 | Narrative | Oil sheen | Basin Plan at 3.3.7 | #2 Drain at Shop Area |
| 1/21/2010 | Narrative | Cloudy / Floating Objects | Basin Plan at 3.3.14 / Basin Plan at 3.3.6 | #3 Drain at Back Parking Lot |
| 12/11/2009 | Narrative | Cloudy / Floating Objects | Basin Plan at 3.3.14 / Basin Plan at 3.3.6 | #1 Main Yard Drain |
| 12/11/2009 | Narrative | Oil sheen | Basin Plan at 3.3.7 | #2 Drain at Shop Area |
| 12/11/2009 | Narrative | Cloudy / Floating Objects | Basin Plan at 3.3.14 / Basin Plan at 3.3.6 | #3 Drain at Back Parking Lot |

Messrs. Slager and Ginochio
Republic Services, Inc.
June 18, 2014
Page 8 of 15

| 11/6/2009 | Narrative | Cloudy / Floating Objects | Basin Plan at 3.3.14 / Basin Plan at 3.3.6 | #1 Main Yard Drain |
|---|---|---|---|---|
| 11/6/2009 | Narrative | Oil sheen | Basin Plan at 3.3.7 | #2 Drain at Shop Area |
| 11/6/2009 | Narrative | Cloudy / Floating Objects | Basin Plan at 3.3.14 / Basin Plan at 3.3.6 | #3 Drain at Back Parking Lot |
| 10/13/2009 | Narrative | Cloudy / Floating Objects | Basin Plan at 3.3.14 / Basin Plan at 3.3.6 | #1 Main Yard Drain |
| 10/13/2009 | Narrative | Oil sheen | Basin Plan at 3.3.7 | #2 Drain at Shop Area |
| 10/13/2009 | Narrative | Cloudy / Floating Objects | Basin Plan at 3.3.14 / Basin Plan at 3.3.6 | #3 Drain at Back Parking Lot |

The information in the above table reflects data gathered from Allied Waste's self-monitoring during the 2009-2010, 2010-2011, 2011-2012, and 2012-2013 wet seasons.  CSPA alleges that during each of those wet seasons and continuing through today, Allied Waste has discharged storm water contaminated with pollutants at levels that violate one or more applicable narrative water quality standards, including but not limited to each of the following:

- o  Floating material - Waters shall not contain floating material, including solids, liquids, foams, and scum, in concentrations that cause nuisance or adversely affect beneficial uses.
- o  Suspended material – Waters shall not contain suspended material in concentrations that cause nuisance or adversely affect beneficial uses.
- o  Color – Waters shall be free of coloration that causes nuisance or adversely affects beneficial uses.
- o  Oil and Grease – Waters shall not contain oils, greases, waxes, or other materials in concentrations that result in a visible film or coating on the surface of the water or on objects in the water, that cause nuisance, or that otherwise adversely affect beneficial uses.

The following discharges of pollutants from the Facility have violated Discharge Prohibitions A(1) and A(2) and Receiving Water Limitations C(1) and C(2) and are evidence of ongoing violations of Effluent Limitation B(3) of the General Permit.

Notice of Violations and Intent to File Suit

Messrs. Slager and Ginochio
Republic Services, Inc.
June 18, 2014
Page 9 of 15

| Date | Parameter | Observed Concentration | EPA Benchmark Value | Outfall (as identified by the Facility) |
|---|---|---|---|---|
| 1/23/2013 | Total Suspended Solids | 528 mg/L | 100 mg/L | Storm Drain 1 |
| 1/23/2013 | Oil & Grease | 61 mg/L | 15 mg/L | Storm Drain 1 |
| 1/23/2013 | Iron | 28 mg/L | 1.0 mg/L | Storm Drain 1 |
| 1/23/2013 | Total Suspended Solids | 780 mg/L | 100 mg/L | Storm Drain 3 |
| 1/23/2013 | Oil & Grease | 40 mg/L | 15 mg/L | Storm Drain 3 |
| 1/23/2013 | Iron | 13 mg/L | 1.0 mg/L | Storm Drain 3 |
| 1/23/2013 | Total Suspended Solids | 590 mg/L | 100 mg/L | Storm Drain 4 |
| 1/23/2013 | Oil & Grease | 69 mg/L | 15 mg/L | Storm Drain 4 |
| 1/23/2013 | Iron | 15 mg/L | 1.0 mg/L | Storm Drain 4 |
| 1/23/2013 | Total Suspended Solids | 1280 mg/L | 100 mg/L | Storm Drain 5 |
| 1/23/2013 | Oil & Grease | 120 mg/L | 15 mg/L | Storm Drain 5 |
| 1/23/2013 | Iron | 29 mg/L | 1.0 mg/L | Storm Drain 5 |
| 1/23/2013 | Iron | 4.3 mg/L | 1.0 mg/L | Surface Sample |
| 1/23/2013 | Total Suspended Solids | 1200 mg/L | 100 mg/L | Effluent Filter |
| 1/23/2013 | Iron | 54 mg/L | 1.0 mg/L | Effluent Filter |
| 11/28/2012 | Total Suspended Solids | 274 mg/L | 100 mg/L | Storm Drain 1 |
| 11/28/2012 | Oil & Grease | 37 mg/L | 15 mg/L | Storm Drain 1 |
| 11/28/2012 | Iron | 12 mg/L | 1.0 mg/L | Storm Drain 1 |
| 11/28/2012 | Total Suspended Solids | 151 mg/L | 100 mg/L | Storm Drain 3 |
| 11/28/2012 | Iron | 4 mg/L | 1.0 mg/L | Storm Drain 3 |
| 11/28/2012 | Total Suspended Solids | 339 mg/L | 100 mg/L | Storm Drain 4 |
| 11/28/2012 | Oil & Grease | 26 mg/L | 15 mg/L | Storm Drain 4 |
| 11/28/2012 | Iron | 9.2 mg/L | 1.0 mg/L | Storm Drain 4 |
| 11/28/2012 | Total Suspended Solids | 510 mg/L | 100 mg/L | Storm Drain 5 |
| 11/28/2012 | Oil & Grease | 59 mg/L | 15 mg/L | Storm Drain 5 |
| 11/28/2012 | Iron | 21 mg/L | 1.0 mg/L | Storm Drain 5 |
| 11/28/2012 | Total Suspended Solids | 6190 mg/L | 100 mg/L | Surface Sample |
| 11/28/2012 | Oil & Grease | 37 mg/L | 15 mg/L | Surface Sample |
| 11/28/2012 | Iron | 250 mg/L | 1.0 mg/L | Surface Sample |
| 11/28/2012 | Total Suspended Solids | 135 mg/L | 100 mg/L | Effluent Filter |
| 11/28/2012 | Iron | 9.9 mg/L | 1.0 mg/L | Effluent Filter |
| 4/10/2012 | Total Suspended Solids | 172 mg/L | 100 mg/L | Main Drain Outlet Pretreatment |
| 4/10/2012 | Oil & Grease | 19 mg/L | 15 mg/L | Main Drain Outlet Pretreatment |
| 4/10/2012 | Iron | 5.5 mg/L | 1.0 mg/L | Main Drain Outlet Pretreatment |
| 4/10/2012 | Total Suspended Solids | 143 mg/L | 100 mg/L | Post Treatment |
| 4/10/2012 | Iron | 10 mg/L | 1.0 mg/L | Post Treatment |

Messrs. Slager and Ginochio
Republic Services, Inc.
June 18, 2014
Page 10 of 15

| 10/4/2011 | Total Suspended Solids | 252 mg/L | 100 mg/L | Main Storm Drain Outlet |
|---|---|---|---|---|
| 10/4/2011 | Iron | 6.5 mg/L | 1.0 mg/L | Main Storm Drain Outlet |
| 3/15/2011 | Total Suspended Solids | 366 mg/L | 100 mg/L | Main Storm Drain Outlet Pretreatment |
| 3/15/2011 | Oil & Grease | 31 mg/L | 15 mg/L | Main Drain Outlet Pretreatment |
| 3/15/2011 | Iron | 6.1 mg/L | 1.0 mg/L | Main Drain Outlet Pretreatment |
| 3/15/2011 | Total Suspended Solids | 212 mg/L | 100 mg/L | Main Drain Outlet Post treatment |
| 3/15/2011 | Iron | 10 mg/L | 1.0 mg/L | Main Drain Outlet Post treatment |
| 12/8/2010 | Total Suspended Solids | 170 mg/L | 100 mg/L | Main Drain Outlet Pre treatment |
| 12/8/2010 | Oil & Grease | 20 mg/L | 15 mg/L | Main Drain Outlet Pre treatment |
| 12/8/2010 | Iron | 2.8 mg/L | 1.0 mg/L | Main Drain Outlet Pre treatment |
| 1/21/2010 | Total Suspended Solids | 462 mg/L | 100 mg/L | Pre treatment |
| 10/13/2009 | Total Suspended Solids | 160 mg/L | 100 mg/L | Pre treatment |
| 10/13/2009 | Oil & Grease | 22 mg/L | 15 mg/L | Pre treatment |
| 10/13/2009 | Oil & Grease | 16.3 mg/L | 15 mg/L | Post treatment |

The information in the above table reflects data gathered from Allied Waste's self-monitoring during the 2009-2010, 2010-2011, 2011-2012, and 2012-2013 wet seasons. CSPA alleges that during each of those wet seasons and continuing through today, Allied Waste has discharged storm water contaminated with pollutants at levels that exceed one or more applicable EPA Benchmarks, including but not limited to each of the following:

- o Total Suspended Solids – 100 mg/L
- o Oil & Grease – 15 mg/L
- o Iron – 1.0 mg/L

CSPA's investigation, including its review of Allied Waste's analytical results documenting pollutant levels in the Facility's storm water discharges well in excess of EPA's benchmark values as well as applicable water quality standards indicates that Allied Waste has not implemented BAT and BCT at the Facility for its discharges of TSS, O&G, iron, and other pollutants in violation of Effluent Limitation B(3) of the General Permit. Allied Waste was required to have implemented BAT and BCT by no later than October 1, 1992, or the date the Facility began operating. Thus, Allied Waste is discharging polluted storm water associated with its industrial operations without having implemented BAT and BCT.

Notice of Violations and Intent to File Suit

Messrs. Slager and Ginochio
Republic Services, Inc.
June 18, 2014
Page 11 of 15

In addition, the numbers listed above indicate that the Facility is discharging polluted storm water in violation of Discharge Prohibitions A(1) and A(2) and Receiving Water Limitations C(1) and C(2) of the General Permit.  CSPA alleges that such violations also have occurred and will occur on other rain dates, including every significant rain event that has occurred since June 18, 2009, and that will occur at the Facility subsequent to the date of this Notice of Violations and Intent to File Suit.  Attachment A, attached hereto, sets forth each of the specific rain dates on which CSPA alleges that Allied Waste has discharged storm water containing impermissible levels of TSS, O&G, and iron in violation of Effluent Limitation B(3), Discharge Prohibitions A(1) and A(2), and Receiving Water Limitations C(1) and C(2) of the General Permit.[3]

These unlawful discharges from the Facility are ongoing.  Each discharge of storm water containing any of these pollutants constitutes a separate violation of the General Permit and the Act.  Consistent with the five-year statute of limitations applicable to citizen enforcement actions brought pursuant to the federal Clean Water Act, Allied Waste is subject to penalties for violations of the General Permit and the Act since June 18, 2009.

     **B.**     ***Failure to Develop and Implement an Adequate Monitoring and Reporting Program***

Section B of the General Permit describes the monitoring requirements for storm water and non-storm water discharges.  Facilities are required to make monthly visual observations of storm water discharges (Section B(4)) and quarterly visual observations of both unauthorized and authorized non-storm water discharges (Section B(3)).  Section B(5) requires facility operators to sample and analyze at least two storm water discharges from all storm water discharge locations during each wet season.  Section B(7) requires that the visual observations and samples must represent the "quality and quantity of the facility's storm water discharges from the storm event."

The above referenced data was obtained from the Facility's monitoring program as reported in its Annual Reports submitted to the Regional Board.  This data is evidence that the Facility has violated various Discharge Prohibitions, Receiving Water Limitations, and Effluent Limitations in the General Permit.  To the extent the storm water data collected by Allied Waste is not representative of the quality of the Facility's various storm water discharges and that the Facility failed to monitor all qualifying storm water discharges, CSPA alleges that the Facility's monitoring program violates Sections B(3), (4), (5) and (7) of the General Permit.

---

[3] The rain dates are all the days when 0.1" or more rain fell as measured by a weather station in Concord approximately seven miles from the facility.  The weather data can be obtained at http://www.ipm.ucdavis.edu/calludt.cgi/WXDESCRIPTION ?STN=UNION_CITY.A (Last accessed on June 18, 2014).

Messrs. Slager and Ginochio
Republic Services, Inc.
June 18, 2014
Page 12 of 15

The Facility's Annual Reports indicate that there is one storm water outfall.  However, the 2012-2013 Annual Report includes storm water sampling results from six different locations.  Therefore, on information and belief, CSPA alleges that the Facility has failed to sample and analyze storm water discharges at all of its storm water discharge locations during the 2009-2010, 2010-2011, and 2011-2012 wet seasons.  This results in up to 30 violations of the General Permit.

In addition, the Facility is required to analyze storm water samples for analytical parameters listed in Table D of the General Permit.  Since the Facility has an SIC Code of 4953, it is required to analyze its storm water samples for iron.  During the 2009-2010 wet season, the Facility failed to analyze its storm water discharges for iron.  This results in at least four violations of the General Permit.

The above violations are ongoing.  Consistent with the five-year statute of limitations applicable to citizen enforcement actions brought pursuant to the federal Clean Water Act, Allied Waste is subject to penalties for violations of the General Permit and the Act's monitoring and sampling requirements since June 18, 2009.

C.    *Failure to Prepare, Implement, Review and Update an Adequate Storm Water Pollution Prevention Plan*

Section A and Provision E(2) of the General Permit require dischargers of storm water associated with industrial activity to develop, implement, and update an adequate storm water pollution prevention plan ("SWPPP") no later than October 1, 1992.  Section A(1) and Provision E(2) require dischargers who submitted an NOI pursuant to the General Permit to continue following their existing SWPPP and implement any necessary revisions to their SWPPP in a timely manner, but in any case, no later than August 1, 1997.

The SWPPP must, among other requirements, identify and evaluate sources of pollutants associated with industrial activities that may affect the quality of storm and non-storm water discharges from the facility and identify and implement site-specific best management practices ("BMPs") to reduce or prevent pollutants associated with industrial activities in storm water and authorized non-storm water discharges (General Permit, Section A(2)).  The SWPPP must include BMPs that achieve BAT and BCT (Effluent Limitation B(3)).  The SWPPP must include: a description of individuals and their responsibilities for developing and implementing the SWPPP (Section A(3)); a site map showing the facility boundaries, storm water drainage areas with flow pattern and nearby water bodies, the location of the storm water collection, conveyance and discharge system, structural control measures, impervious areas, areas of actual and potential pollutant contact, and areas of industrial activity (Section A(4)); a list of significant materials handled and stored at the site (Section A(5)); a description of potential pollutant sources including industrial processes, material handling and storage areas, dust and particulate generating activities, a description of significant spills and leaks, a list of all non-storm water

Messrs. Slager and Ginochio
Republic Services, Inc.
June 18, 2014
Page 13 of 15

discharges and their sources, and a description of locations where soil erosion may occur (Section A(6)).

The SWPPP also must include an assessment of potential pollutant sources at the Facility and a description of the BMPs to be implemented at the Facility that will reduce or prevent pollutants in storm water discharges and authorized non-storm water discharges, including structural BMPs where non-structural BMPs are not effective (Section A(7), (8)).  The SWPPP must be evaluated to ensure effectiveness and must be revised where necessary (Section A(9),(10)).

CSPA's investigation of the conditions at the Facility as well as Allied Waste's Annual Reports indicate that Allied Waste has been operating with an inadequately developed or implemented SWPPP in violation of the requirements set forth above.  Allied Waste has failed to evaluate the effectiveness of its BMPs and to revise its SWPPP as necessary.  Allied Waste has been in continuous violation of Section A and Provision E(2) of the General Permit every day since June 18, 2009, at the very latest, and will continue to be in violation every day that Allied Waste fails to prepare, implement, review, and update an effective SWPPP.  Allied Waste is subject to penalties for violations of the General Permit and the Act occurring since June 18, 2009.

> ### D.      Failure to File True and Correct Annual Reports

Section B(14) of the General Permit requires dischargers to submit an Annual Report by July 1st of each year to the executive officer of the relevant Regional Board.  The Annual Report must be signed and certified by an appropriate corporate officer.  General Permit, Sections B(14), C(9), (10).  Section A(9)(d) of the General Permit requires the discharger to include in their annual report an evaluation of their storm water controls, including certifying compliance with the General Permit.  *See also* General Permit, Sections C(9) and (10) and B(14).

For the last four wet seasons, Allied Waste and its agent, Paul Ginochio, inaccurately certified in its Annual Reports that the Facility was in compliance with the General Permit.  Consequently, Allied Waste has violated Sections A(9)(d), B(14), and C(9) & (10) of the General Permit every time Allied Waste failed to submit a complete or correct report and every time Allied Waste or its agents falsely purported to comply with the Act.  Allied Waste is subject to penalties for violations of Section (C) of the General Permit and the Act occurring since at least June 8, 2010.

## III.    Persons Responsible for the Violations.

CSPA puts Allied Waste on notice that they are the persons responsible for the violations described above.  If additional persons are subsequently identified as also being responsible for the violations set forth above, CSPA puts Allied Waste on notice that it intends to include those persons in this action.

Messrs. Slager and Ginochio
Republic Services, Inc.
June 18, 2014
Page 14 of 15

## IV.    Name and Address of Noticing Parties.

The name, address, and telephone number of CSPA is as follows:

Bill Jennings, Executive Director
California Sportfishing Protection Alliance
3536 Rainier Avenue
Stockton, CA 95204
Tel. (209) 464-5067
Fax (209) 464-1028
E-Mail: deltakeep@me.com

## V.    Counsel.

CSPA has retained our office to represent it in this matter.  Please direct all
communications to:

Michael R. Lozeau
Douglas J. Chermak
Lozeau Drury LLP
410 12th Street, Suite 250
Oakland, California 94607
Tel. (510) 836-4200
Fax (510) 836-4205
michael@lozeaudrury.com
doug@lozeaudrury.com

## VI.    Penalties.

Pursuant to Section 309(d) of the Act (33 U.S.C. § 1319(d)) and the Adjustment of Civil
Monetary Penalties for Inflation (40 C.F.R. § 19.4) each separate violation of the Act subjects
Allied Waste to a penalty of up to $37,500 per day per violation.  In addition to civil penalties,
CSPA will seek injunctive relief preventing further violations of the Act pursuant to Sections
505(a) and (d) (33 U.S.C. §1365(a) and (d)) and such other relief as permitted by law.  Lastly,
Section 505(d) of the Act (33 U.S.C. § 1365(d)) permits prevailing parties to recover costs and
fees, including attorneys' fees.

CSPA believes this Notice of Violations and Intent to File Suit sufficiently states grounds
for filing suit.  CSPA intends to file a citizen suit under Section 505(a) of the Act against Allied
Waste for the above-referenced violations upon the expiration of the 60-day notice period.
However, during the 60-day notice period, CSPA would be willing to discuss effective remedies
for the violations noted in this letter.  If you wish to pursue such discussions in the absence of
litigation, CSPA suggests that you initiate those discussions within the next 20 days so that they

Messrs. Slager and Ginochio
Republic Services, Inc.
June 18, 2014
Page 15 of 15

may be completed before the end of the 60-day notice period.  CSPA does not intend to delay the filing of a complaint in federal court if discussions are continuing when that period ends.

       Sincerely,

       Douglas J. Chermak
       Lozeau Drury LLP
       Attorneys for California Sportfishing Protection Alliance


cc via First Class Mail:       CT Corporation System, Agent for Service of Process for Republic Services, Inc. (Entity Number C2267166)
818 West Seventh Street, 2nd Floor
Los Angeles, CA 90017

## <u>SERVICE LIST – via certified mail</u>

Gina McCarthy, Administrator
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Mail Code: 1101A
Washington, D.C. 20460

Thomas Howard, Executive Director
State Water Resources Control Board
P.O. Box 100
Sacramento, CA 95812-0100

Eric Holder, U.S. Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, DC 20530-0001

Jared Blumenfeld, Regional Administrator
U.S. EPA – Region 9
75 Hawthorne Street
San Francisco, CA, 94105

Bruce H. Wolfe, Executive Officer II
San Francisco Bay Regional Water Quality Control Board
1515 Clay Street, Suite 1400
Oakland, CA 94612

**ATTACHMENT A**
Rain Dates, Allied Waste Pacheco, Pacheco, California

| | | |
|---|---|---|
| 10/13/2009 | 4/28/2010 | 3/23/2011 |
| 10/19/2009 | 5/10/2010 | 3/24/2011 |
| 11/20/2009 | 5/17/2010 | 3/25/2011 |
| 11/27/2009 | 5/25/2010 | 3/26/2011 |
| 12/6/2009 | 5/26/2010 | 4/7/2011 |
| 12/7/2009 | 5/27/2010 | 5/17/2011 |
| 12/11/2009 | 10/23/2010 | 6/1/2011 |
| 12/12/2009 | 10/24/2010 | 6/4/2011 |
| 12/13/2009 | 11/7/2010 | 6/5/2011 |
| 12/26/2009 | 11/19/2010 | 6/28/2011 |
| 1/12/2010 | 11/20/2010 | 10/3/2011 |
| 1/18/2010 | 11/23/2010 | 10/5/2011 |
| 1/19/2010 | 11/27/2010 | 11/5/2011 |
| 1/20/2010 | 12/5/2010 | 11/11/2011 |
| 1/21/2010 | 12/8/2010 | 11/19/2011 |
| 1/23/2010 | 12/14/2010 | 11/24/2011 |
| 1/25/2010 | 12/17/2010 | 1/19/2012 |
| 1/26/2010 | 12/18/2010 | 1/20/2012 |
| 1/29/2010 | 12/19/2010 | 1/21/2012 |
| 2/4/2010 | 12/21/2010 | 1/22/2012 |
| 2/6/2010 | 12/25/2010 | 1/23/2012 |
| 2/9/2010 | 12/28/2010 | 2/7/2012 |
| 2/21/2010 | 1/1/2011 | 2/13/2012 |
| 2/23/2010 | 1/2/2011 | 2/29/2012 |
| 2/26/2010 | 1/30/2011 | 3/1/2012 |
| 2/27/2010 | 2/15/2011 | 3/13/2012 |
| 3/2/2010 | 2/16/2011 | 3/14/2012 |
| 3/3/2010 | 2/17/2011 | 3/16/2012 |
| 3/10/2010 | 2/18/2011 | 3/17/2012 |
| 3/12/2010 | 2/19/2011 | 3/24/2012 |
| 3/30/2010 | 2/24/2011 | 3/25/2012 |
| 3/31/2010 | 2/25/2011 | 3/27/2012 |
| 4/4/2010 | 3/6/2011 | 3/31/2012 |
| 4/11/2010 | 3/14/2011 | 4/10/2012 |
| 4/12/2010 | 3/15/2011 | 4/12/2012 |
| 4/20/2010 | 3/18/2011 | 4/13/2012 |
| 4/21/2010 | 3/19/2011 | 4/25/2012 |
| 4/27/2010 | 3/20/2011 | 5/8/2012 |

Notice of Violations and Intent to File Suit

| | |
|---|---|
| 6/4/2012 | 4/1/2014 |
| 10/22/2012 | 4/4/2014 |
| 10/31/2012 | 4/25/2014 |
| 11/1/2012 | |
| 11/9/2012 | |
| 11/16/2012 | |
| 11/17/2012 | |
| 11/21/2012 | |
| 11/30/2012 | |
| 12/2/2012 | |
| 12/21/2012 | |
| 12/22/2012 | |
| 12/23/2012 | |
| 12/25/2012 | |
| 1/5/2013 | |
| 1/23/2013 | |
| 2/19/2013 | |
| 3/6/2013 | |
| 3/19/2013 | |
| 3/30/2013 | |
| 3/31/2013 | |
| 4/1/2013 | |
| 4/4/2013 | |
| 4/7/2013 | |
| 11/19/2013 | |
| 11/20/2013 | |
| 11/21/2013 | |
| 12/6/2013 | |
| 1/30/2014 | |
| 2/2/2014 | |
| 2/5/2014 | |
| 2/6/2014 | |
| 2/7/2014 | |
| 2/8/2014 | |
| 2/9/2014 | |
| 2/26/2014 | |
| 2/28/2014 | |
| 3/5/2014 | |
| 3/26/2014 | |
| 3/29/2014 | |
| 3/31/2014 | |

Notice of Violations and Intent to File Suit